THE STATE, DEFENDANT IN ERROR, v. MATTHEW J. READY, PLAINTIFF IN ERROR.

Submitted December 14, 1908—Decided February 23, 1909.

1. On the trial of an indictment for forging the name of an alleged testator to a will, it was not error to admit in evidence a photograph of the name of the testator, made from two admittedly genuine signatures of such testator, the words "John W." being a photograph from one, and the word "Russell" from the other genuine signature, for the purpose of illustrating the difference between the genuine signature and the signature claimed to be spurious, it being shown just what the photograph represented. Nor did the fact that the photograph exhibited the signature on a background of ruled squares destroy its admissibility.

2. On such trial it was not error to exclude the testimony of a witness offered to show that he had heard the alleged testator say that he intended to make a will and leave his property to a person named in the alleged will as his beneficiary.

3. It was not error to exclude a photograph of the alleged testator, offered for the purpose of having a witness identify the picture as that of a person he saw in the defendant's office twenty-nine years after the photograph was taken.

4. The tender of a will, knowing it to be forged, to a surrogate for probate, was an uttering of the will, although the surrogate in that particular instance may not have had jurisdiction to admit the will to probate.

5. A charge that "suspicious circumstances may come to the point where the jury are satisfied of the existence of a fact, and it may be they would go as far as to satisfy the jury beyond a reasonable doubt of some of the facts claimed to have been proven by such evidence," is not erroneous, particularly when taken with other parts of the charge, stating that, in order to prove the existence of a fact by circumstances, they must be such as will lead the jury to but one conclusion, that is, proof of the fact beyond a reasonable doubt.

On writ of error to Essex Quarter Sessions.

Before Justices REED, BERGEN and MINTURN.

For the defendant in error, *Wilbur A. Mott,* prosecutor of the pleas.

For the plaintiff in error, *Thomas S. Henry* and *Samuel Kalisch*.

The opinion of the court was delivered by

REED, J.  This writ of error brings up the record of a judgment entered upon the conviction of Matthew J. Ready for forging and for uttering a paper purporting to be the will of one John W. Russell.

The first point made in the briefs for the plaintiff in error is under the third and fourth assignments of error.  It challenges the admissibility of an answer made by a witness who was asked: "*Q.* And what next did you learn from Carvallo?"

It appears that a Mr. Anthony, a lawyer, wished to discover whether the will alleged to have been forged was a forgery, and wished to learn it for his own professional guidance.  He had testified that he had retained Mr. Carvallo, a handwriting expert, for the purpose of having him compare the signature to the will with some admittedly genuine signatures of Mr. Russell, the alleged testator; that Mr. Carvallo made a report respecting the result of his examination.  The witness was then asked: "*Q.* What followed that report?"  After a colloquy between counsel and the court the inquiry was put in the shape of a question as to how long after the report of Carvallo the criminal complaint against Ready for forgery was made.  This question was objected to, but the witness was permitted to answer that the complaint was made the following morning.

This, standing alone, would indicate that Carvallo's report had been that the Russell will was a forgery, and it was hearsay testimony.

But Mr. Carvallo was afterward examined as a witness, and, as such, testified that, in his opinion, the signature alleged to be that of Mr. Russell subscribed to the will was a forgery, and, in support of his opinion, gave in detail his reason for thinking the signature to be spurious.

In view of these circumstances, the inference that might have been drawn from the former testimony cannot be said to have been injurious to the defendant, as it only went to raise

the inference that, in the opinion of Mr. Carvallo, the signature of Mr. Russell was forged, and this inference would be insignificant in the face of Mr. Carvallo's subsequent testimony that, in his judgment, the signature was a forgery.

The second point is based upon the assignment directed to the admission in evidence of photographs representing the name of John W. Russell. It appears that the "John W." represented in the name of John W. Russell was taken from one admittedly genuine signature, and the word "Russell" was taken from another admittedly genuine signature—one the natural size and one a two diameter enlarged sized photograph were so made. These photographs were used by the expert to illustrate his explanation of the difference between the original signature and the alleged spurious signature. The photographs were reproductions of existing standards. The first part of the name could have been introduced in one and the second part in another photograph, but that these parts were brought together in a single photograph did not destroy the verisimilitude of the picture, so long as it was understood to be what it was, a representation of the parts of two distinct genuine signatures.

Nor did the fact that the photograph exhibited the signature on a background of ruled squares destroy the admissibility of the offered picture. It is said that the photograph of the signature to the will, and the signatures composed of parts of two names signed to letters known as the "Dear Mary" letters, were improperly permitted to go to the jury, because they were crossed by longitudinal and vertical lines forming squares.

The photographs were taken by placing over them a glass upon which such lines were drawn forming uniform squares. The purpose was to exhibit the uniformity in the size and proportion of the letters in the two photographs, the theory of the expert being that the signatures to the two "Dear Mary" letters were used by the forger as a standard to reproduce the alleged spurious signature. It is insisted by the plaintiff in error that these lines were the reproduction of no original, but were merely an exposition of the theory of the witness, and, as such, should not have gone into the hands of the jury.

No one, I think, will dispute that a glass, plain or with magnifying powers, marked with lines so as to afford a measure of space and a standard of proportion, could have been put into the hands of the jury for the purpose of applying it to the signatures, whether of written size or of magnified size. It would amount to no more than applying a measure to the signatures, and then viewing the measure and the signatures through a glass.

So we think there was no error in the admission of these photographs.

The next point is directed to the seventeenth and eighteenth assignments, and is based upon the refusal of the trial court to permit the defendant to prove that Mr. Russell had declared his intention to make a will and leave his property to Miss Clavin, Miss Clavin being the beneficiary named in the paper in question.

The exclusion of the testimony offered is in accordance with the rule laid down in *Meeker* v. *Boylan,* 4 *Dutcher* 274, a case cited with approval in *Rusling* v. *Rusling,* 9 *Stew. Eq.* 603, and in *Gordon Will Case,* 5 *Dick. Ch. Rep.* 397, 425; affirmed, 7 *Dick. Ch. Rep.* 317.

The next ground alleged for error is the exclusion of the proffered testimony of one Elisha Doremus. This witness began to tell something that Mr. Russell, the alleged testator, wished him to do in 1905. He was stopped by an objection. He was then asked: "*Q.* Did he want you to draw a will for him?" An objection was interposed, and then defendant's counsel said: "It is competent evidence to show what I said I would prove, that this witness sent Mr. Russell to the corner of Broad and Mechanic streets to have his will drawn, and that Mr. Russell did go to the corner of Broad and Mechanic streets and went into Mr. Ready's office." This offer was excluded. Then the witness was asked by defendant's counsel: "*Q.* Did you ever during the month of August, 1905, or later, direct Mr. Russell to go to the corner of Broad and Mechanic streets, in the city of Newark, New Jersey, for any purpose whatever?" This was objected to and excluded.

The exclusion of the last question must be viewed in the light of the previous statement of what the defendant proposed to prove, namely, that this witness sent Mr. Russell to Ready's office to have his will drawn. This implied that Russell had expressed a wish to have his will drawn. The question was asked as a part of the expressed purpose to show this. We think its exclusion is justified upon the. same ground as the exclusion of the evidence of statements made by Russell respecting his intention to make a will in favor of Miss Clavin.

The next point is rested upon the twenty-sixth assignment. One Naylor said he was in the office of Ready, the defendant, on the 15th day of November, 1905, and described a person whom he said he saw there on that day. The defendant's counsel wished to show the witness a photograph of Mr. Russell, and then ask the witness whether he could identify the person who was in Ready's office by the use of that photograph. This offer was overruled.

The admission of photographs as substitutes for persons, places or things which they purport to reproduce is largely within the discretion of the trial court. Where the photograph does not represent the object as it was conditioned at the time when its appearance is the subject of inquiry, proof by photograph may be excluded. All the testimony respecting this photograph as a reproduction of the appearance of Mr. Russell is by Miss Clavin, who says the picture was taken in 1876, twenty-nine years before the date at which Mr. Naylor says he saw someone in Mr. Ready's office. That this interval in the life of an old man would result in material alterations in his appearance is a matter of common knowledge, and that it resulted in sufficient change in feature and appearance, may, I think, be presumed, at least, to make it a question for judicial discretion whether or not the picture should be admitted as a standard to fix the identity of a person whom the witness saw in the defendant's office.

The next point challenges the correctness of the following remarks of the judge in his charge to the jury: "So far as the question of forgery is concerned, there is sufficient in the case, if you find that the signature is not in fact a genuine signa-

ture, to establish that this is a case of forgery on the part of the defendant. The disputed point here is, is the signature genuine?"

The criticism of this part of the charge is that although the signature of Russell may have been forged by someone, the jury might have found that there was reasonable doubt whether Ready was the forger.

Ready's defence was that the signature was genuine; that he saw Russell write it, and that he, Ready, attested the signature as a witness. What the court said was, if that testimony was false, if Russell did not sign the will as Ready testified, then there was sufficient in the case to establish a case of forgery against the defendant. The court did not say that the jury must find the defendant guilty, but that there was sufficient to find him guilty, if Russell in fact did not·sign the will. What the court said could be paraphrased thus: If you believe all the testimony of Ready respecting the signing of this will to be false, then, although no one else saw Ready sign Russell's will, and someone else might have signed it, there is sufficient in the circumstances for you to conclude that Ready did forge Russell's name.

The point tried out in the case was whether the signature which Ready says he saw Russell sign was made by Russell.

But a conclusive answer to this objection is that the entire record is not returned under section 136 of the Criminal Procedure act, and so the causes in the record relied on for reversal are not specified nor a copy served. The defendant, therefore, must rely upon his exception taken at the trial, and there was no exception taken to this part of the charge.

The next point challenges the correctness of the court's charge that the presentation of the will to the surrogate, or to Miss Clavin, the beneficiary under the will, with the intention that it should be used as a genuine will, furnished a ground for finding that the defendant uttered the instrument. This criticism goes only, of course, to the conviction upon the second count of the indictment, that of uttering.

The criticism to this portion of the charge is that it appears that letters of administration to the estate of John W. Rus-

sell had been granted before the will was offered for probate, and that after the grant of such letters of administration the surrogate had no jurisdiction to admit the will to probate, and therefore the tendering of the will to the surrogate did not constitute an uttering of the paper.

We think otherwise. It is the intention to defraud, not the accomplishment of the fraud by uttering, that constitutes the crime. The false instrument need not have been passed away to constitute an uttering. 2 *Bouv. Dict.* 618. The proffer of a will, known to be false, to an officer who is known to have a general power to approve such an instrument, and to make it the basis for the administration of personal estate, is an assertion of the genuineness of the paper, coupled with the intention that someone will be defrauded by its probate, and that will constitute an uttering.

The next point is directed to the language of the court respecting the probative force of suspicious circumstances. The court had said to the jury: "Of course you may draw deductions from the facts proven in evidence, and those deductions may be the basis of your verdict, if they are properly and fairly drawn from it." Then follows the language criticised: "Mere suspicions, of course, gentlemen, are not sufficient to convict anybody of crime or of anything else, but suspicious circumstances may be part of the circumstances from which knowledge may be inferred, and suspicious circumstances may come to the point where the jury are satisfied of the existence of facts, and it may be they would go as far as to satisfy you beyond a reasonable doubt of some of the facts claimed to have been proven by such evidence. Whether this is so or not, is entirely for you to say. It is altogether a question of what this evidence means."

This language I take to mean that incriminating circumstances, each of which would create no higher degree of conviction in the minds of the jury than a suspicion of the existence of a fact, may be so numerous as to have a cumulative effect of raising a suspicion that a fact existed from a suspicion to a conviction beyond a reasonable doubt; in other words, that each circumstance need not be proved beyond a

reasonable doubt, if all the circumstances taken together leave no reasonable doubt of the existence of the fact.

The language so employed must be read as a part of the entire charge. In the charge the judge had dealt with circumstantial evidence, which he styled evidence of facts from which other facts may be inferred. He charged that the existence of fact may be proved by circumstances, and that in order to prove the existence of fact in that way the circumstances must be such as, in the judgment of the jury who are to pass upon them, will lead only to one reasonable conclusion, and that is proof of the facts beyond a reasonable doubt. If they can reasonably lead to any other conclusion, then they cannot be, in a criminal cause, sufficient to found a verdict.

And again he charged: "If the evidence of the state is not sufficient to satisfy you, the jury, beyond a reasonable doubt, then no matter what suspicions there may be, or circumstances which look suspicious, he cannot be convicted, but if the result of all the evidence in the case, as the jury finally sift it out and determine its truth, is to satisfy their judgment beyond a reasonable doubt, then he may be convicted."

We are of the opinion that there was no error in the charge.

We think the judgment should be affirmed.